IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


JAMMY DEMOND BELL, #168174,          :

     Plaintiff,                    :

vs.                                  :   CIVIL ACTION 06-0404-KD-M

J. PERRY NEWTON, et al.,             :

     Defendants.                   :


REPORT AND RECOMMENDATION


Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a Complaint under 42 U.S.C. § 1983.[1]  This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  It is recommended that it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Plaintiff's claims are either frivolous or fail to state a claim upon which relief may be granted.

I.  Nature of Proceedings.

    A.  State of Pleadings.

---

[1]Plaintiff has filed several actions in this Court and in other federal district courts in Alabama.  Two of his actions warranted dispositions under 28 U.S.C. § 1915(e)(2)(B), namely, *Bell v. Hightower,* CA 98-0399-MHT-CSC  (M.D. Ala. Apr. 24, 1998) (frivolous), and *Bell v. Jackson, et al.,* CA 97-1489-MHT-CSC (M.D. Ala. June 11, 1998), *aff'd* (11th Cir. Mar. 11, 1999) (appeal frivolous).

The Complaint before the Court is an Amended Complaint (Doc. 8) that the Court directed Plaintiff to file because his original Complaint was not on the Court's current complaint form (Doc. 3). In the superseding Amended Complaint, Plaintiff names as Defendants J. Perry Newton, Ben Kelly, Glenn L. Davidson, and Carlos Williams, Plaintiff's criminal defense counsel at various stages; Thomas Baxter, Circuit Court Judge for Washington County, Alabama; William H. Steele, United States District Court Judge for the Southern District of Alabama; Mike Barnett, Chief of Police, McIntosh, Alabama; William Wheat, Sheriff of Washington County, Alabama; Officers Mike Reed, Priston Jones, and Mosley; Bobby D. Keahey, District Attorney for Washington County; David York, United States Attorney for the Southern District of Alabama; and Patrick Thomas, the State's witness. Against each Defendant, Plaintiff lists a claim for "malicious prosecution" and for "conspiracy," among other claims. Plaintiff seeks $10 million from each Defendant as well as other damages for his allegedly illegal arrest, false indictments, mental anguish, and incarceration, and to have Defendant Barnett terminated from his employment and barred from state and federal employment.[2]

---

[2]The Court notes that it does not have the "authority to address state officials out of office or to fire state employees." *Newman v. Alabama,* 559 F.2d 283, 288 (5th Cir.), *cert. denied*, 438 U.S. 915 (1978). Thus, Plaintiff's request concerning Defendant Barnett's present and future employment is frivolous.

Plaintiff's allegations concern criminal proceedings that resulted in his conviction for receiving stolen property, second degree, in Washington County, Alabama, on November 5, 2003,[3] and in his conviction for being a felon in possession of a firearm rendered on March 15, 2004, in the United States District Court for the Southern District of Alabama.[4]  Plaintiff has given no indication that either conviction has been invalidated.

Plaintiff's pleading of his claims on the complaint form (Doc. 8) does not follow the form's directives.  In the area where each Defendant is identified individually with the claims lodged against him or her, Plaintiff provided only legal conclusions for his claims against each Defendant, e.g., malicious prosecution, conspiracy, ineffective assistance of counsel.  He did not provide any facts to support a claim against a Defendant in the space provided.  Instead, the factual information is supplied, in its entirety, in a narrative.  This required the Court to extract the information from the narrative that is relevant to each Defendant.

Because § 1983 requires a causal connection be demonstrated between a defendant's acts, omissions, customs, or policies and

---

[3] Plaintiff's conviction for receiving stolen property, second degree, is the subject of a habeas action in this Court, *Bell v. Culliver,* CA No. 07-0605-WS-C, which is pending.

[4]Plaintiff's criminal action in this Court is *United States v. Bell,* CR No. 03-00210-WS-D (S.D. Ala. Aug. 11, 2006).

deprivation of a constitutional right of Plaintiff, only the facts related to a named Defendant are included. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986).  The Court observes that Defendants in the Amended Complaint are not the same as Defendants in the original Complaint, which was superseded by the Amended Complaint.  Notwithstanding, the factual information directed to each Defendant is scant and much of this information is conclusory.

    B.   <u>Complaint as Amended (Doc. 8)</u>.

    Plaintiff claims that on August 2, 2002, he was arrested and questioned by Defendant Mike Barnett, Chief of Police for McIntosh, Alabama.  Earlier in the day, Plaintiff went to Defendant Barnett stating that he was entitled to an amplifier and a speaker on his land because no one had claimed it.  Plaintiff, however, offered that it could belong to his family's church in Mt. Vernon.  Nonetheless, Defendant Barnett arrested Plaintiff on the charge of receiving stolen property, second degree.  Nick Reed was ordered by Defendant Barnett to take Plaintiff to the scene.

    Plaintiff directed Nick Reed to where his cousins, Rev. Elder Miller, Defendant Patrick Thomas, and Chandler Bell, were taking down the tent.  Nick Reed got out of the car and asked Rev. Miller and Defendant Thomas to come over to the car because Plaintiff was sitting in the backseat with the window rolled

down.  At the car Nick Reed said that Plaintiff had confessed to
stealing the speaker and the amplifier and was charged with
receiving stolen property, second degree, burglary, third
degree, and theft of property, second degree.  Rev. Miller, who
owned the stolen property through the church, informed the
members and officers of the church and law enforcement officials
not to file charges against Plaintiff on his or the church's
behalf because he forgave Plaintiff.  Rev. Miller said that
Plaintiff could have the property, that Defendant Thomas and Mr.
Bell were to leave Plaintiff alone, and Nick Reed should let
Plaintiff go home because Plaintiff was already on his own land.
Defendant Barnett, being advised of these events by Nick Reed,
ordered Plaintiff released.

Plaintiff immediately moved to Mobile where he found work.
While in Mobile he was in an automobile accident, and his name
was checked even though he was the passenger.  An active warrant
from Washington County for receiving stolen property, second
degree, was discovered for him.  Plaintiff was arrested even
though he explained the situation.  Defendant Barnett picked him
up and held him in custody from October 17, 2002, to March,
2003, on the same charge.

When Plaintiff was released, he returned to Mobile.  Five
months later, on July 15, 2003, he was picked up again on the
same charge.  Defendant Barnett told Plaintiff that even if it

resulted in Plaintiff being falsely convicted, he would see that Plaintiff was convicted of something this time with the help of officials in Chatom, such as the District Attorney, Defendant Ben Kelly, Defendant Judge Baxter, and Judge Crow.

Defendant Barnett ordered Officer House to take Plaintiff to the Chatom Jail, which is where Defendant Sheriff William Wheat and Defendants Officers Priston Jones, Mike Reed, and Mosley assaulted Plaintiff in an attempt to coerce him to admit to the charges of receiving stolen property, second degree, and theft of property, second degree, but Plaintiff would not confess. While Plaintiff was in the holding cell away from witnesses, "they" said that "they" were going to kill him in his cell in an attempt to scare him into pleading guilty.

On October 17, 2003, Plaintiff's preliminary hearing was changed into a "settlement hearing" against his will. Plaintiff's attorney, Defendant Ben Kelly, argued "'aright' for [him] in that hearing to have all indictment and charges and suppress motion [ ] to be suppressed and case dismissed." Defendant Kelly told plaintiff that he had talked with the District Attorney and Defendant Barnett and that he would not represent Plaintiff to the best of his ability. Plaintiff then tried to have the Court order Defendant Kelly to properly represent him. Defendant Baxter refused because he would have to say on the record that Defendant Kelly was not arguing

Plaintiff's case "aright."

Plaintiff claims that he was denied effective assistance counsel pursuant to a conspiracy by "officer," Defendant Barnett, Defendant Kelly, and Defendant Keahey because Defendant Keahey knew the owners had given Plaintiff the property which was allegedly stolen by Chandler Bell and Plaintiff. "Then Bobby Keahey knew by Chief Barnett that [Plaintiff] was actually guilty of stealing it but [Plaintiff] tried to return the property to the owner befor (sic) [Plaintiff] was charged with any crime, but Rev. Miller told [Plaintiff] before [Plaintiff] was charged and after that [Plaintiff] could have the property and it was on [Plaintiff's] own land, and he made no claims of it to anyone Officer Nick Reed or Barnett to prosecute for [Plaintiff] or for the church, so Bobby Keahey alone with Judge Baxter was in violating my rights when they presecuted (sic) a case of any crime."

On November 5, 2003, Plaintiff was convicted of receiving stolen property and was sentenced on December 10, 2003.  On direct appeal and in the Rule 32 proceeding, Plaintiff's attorney Defendant Glen Davidson failed to raise amended claims and grounds, respectively, which was Defendant Davidson's role in the conspiracy that was allegedly agreed upon by Defendants Judge Baxter and Barnett.  In the Rule 32 proceeding, Rev. Miller testified that as the rightful owner through the church

that neither he nor the church officers had given anyone the
authority to prosecute Plaintiff.

Defendant Barnett told Plaintiff that in case Plaintiff's
conviction was reversed on appeal that he would have his friend,
Defendant York, bring false charges against Plaintiff in federal
court.  This lead to Plaintiff being convicted and sentenced in
federal court as a result of a conspiracy with Defendant Judge
Steele, Defendant York, and Defendant Barnett to deny Plaintiff
effective assistance of counsel and his motion of acquittal.

Plaintiff maintains that he is innocent of his state
conviction and his federal conviction for possession of a
firearm by a convicted felon because he did not have actual or
constructive possession of a weapon on or before July 15, 2003.
And the person described in the arrest warrant did not match his
description.  When the jury in Plaintiff's federal criminal case
failed to make a decision, an *Allen* charge was given over
Plaintiff's attorney's objection.  Plaintiff contends that the
jury should not be forced to relinquish their honest belief in
order to reach a verdict disposing of a case.  The case would
have been a mistrial but for Defendant Barnett, Defendant Judge
Steele, and Defendant York.  Plaintiff's conviction and sentence
were affirmed on appeal due to appellate counsel failing to make
arguments on appeal or give effective assistance of counsel.

On August 4, 2006, in Plaintiff's Rule 32 proceeding in

8

state court, Defendant J. Newton told Plaintiff that he would not argue additional claims because he was working with "them against" Plaintiff and that Defendant Barnett and he are best friends.  Thus, Plaintiff sought to have new counsel appointed, but his request was denied by Defendant Judge Baxter.

Defendant Patrick Thomas gave false testimony at Plaintiff's trial on November 4, 2003, in order to falsely convict Plaintiff in accordance with the prosecution's conspiracy planned by Defendant Barnett.  Defendant Thomas also gave false statements to Defendant Barnett on August 2, 2003, that were used to arrest Plaintiff.

II.   Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing Plaintiff's Amended Complaint under 28 U.S.C. § 1915(e)(2)(B).[5]  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32 (1989).  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.* at

_____

[5]The predecessor to this section is 28 U.S.C. § 1915(d). Even though Congress made many substantive changes to § 1915(d) when it enacted 28 U.S.C. § 1915(b)(2)(B), the frivolity and the failure to state a claim analysis contained in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989), was unaltered. *Bilal v. Driver,* 251 F.3d 1346, 1349 (11th Cir.), *cert. denied,* 534 U.S. 1044 (2001); *Brown v. Bargery*, 207 F.3d 863, 866 n.4 (6th Cir. 2000).  However, dismissal under § 1915(e)(2)(B) is now mandatory.  *Bilal,* 251 F.3d at 1348-49.

327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. *Id.* Judges are accorded "not only the authority to dismiss [as frivolous] a claim based on indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted if plaintiff provides only labels and conclusions and a formulaic recitation of the cause of action's elements for grounds for his entitlement to relief. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965; *see Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir. 1997) (noting that § 1915(e)(2)(B)(ii)'s language tracks the language of Fed.R.Civ.P. 12(b)(6)). Dismissal for failure to state a claim is also warranted when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint. *Jones v. Bock*, 127 S.Ct. 910, 920-21 (2007).

III.   <u>Discussion</u>.

    A.   <u>Conspiracy Claim</u>.

    "To establish a prima facie case of section 1983 conspiracy, a plaintiff must show among other things, that the

defendants 'reached an understanding to violate [his] rights.'"
*Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002)
(citation omitted) (brackets in original).  It is not necessary
to produce a "smoking gun" to show an "understanding" or
"willful participation," but there must be some evidence of an
agreement between defendants to show a conspiracy.  *Id.*  While
on the other hand, an assertion of a conspiracy that is vague
and conclusory fails to state a claim upon which relief can be
granted.  *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir.
1984).

     In Plaintiff's description of his claims against different
Defendants or groups of Defendants, he alleges at various points
in time that they "conspired" to convict him.  There are no
allegations showing that an understanding was reached between or
among Defendants or that there was one detailed prevailing plan.
His conspiracy allegations seem to be asserted for the purpose
of bringing people together because there are no other
allegations that would show they would be together at that
point.  It appears that Plaintiff would like the Court to
presume that because he was convicted, there was a conspiracy.
After review of the conspiracy allegations and observing a lack
of factual support, the assertions of a conspiracy appear only
to be vague and conclusory and they do not rise above the
speculative level.  *See Williams v. St. Vincent Hosp.,* 2007 WL

42944710 (11th Cir. Dec. 10, 2007) (unpublished).  Accordingly,
the undersigned finds that Plaintiff has failed to state a
conspiracy claim upon which relief can be granted.  Therefore,
the conspiracy claim is due to be dismissed.

     B.  <u>Claims that are Barred by the Statute of Limitations</u>.

        1.  <u>Applicable Law</u>.

In the recent case of *Wallace v. Kato*, 127 S.Ct. 1091
(2007), the Supreme Court distinguished claims that arose before
a person is detained without legal process as being in the
nature of a false imprisonment claim of which false arrest is a
category.  *Id.* at 1095-96.  "Thereafter, unlawful detention
forms part of the damages for the 'entirely distinct' tort of
malicious prosecution, which remedies detention accompanied, not
by absence of legal process, but by *wrongful institution* of
legal process."  *Id.* at 1096 (quotation omitted and italics in
original).  "We hold that the statute of limitations upon a §
1983 claim seeking damages for a false arrest in violation of
the Fourth Amendment, where the arrest is followed by criminal
proceedings, begins to run at the time the claimant becomes
detained pursuant to legal process."  *Id.* at 1100.

Because a § 1983 action is described as a constitutional
tort action, a state statute of limitations for personal injury
actions is borrowed for the statute of limitations in a § 1983
action.  *Id.* at 1094.  In Alabama the statute of limitations for

a § 1983 action is two years.  *Lufkin v. McCallum,* 956 F.2d 1104, 1106, 1108 (11th Cir.), *cert. denied,* 506 U.S. 917 (1992); ALA. CODE § 6-2-38(l).  Even though state law determines the length of the limitations period, federal law specifies when the cause of action accrues, thereby starting the running of the statute of limitations.  *Wallace,* 127 S.Ct. at 1095.  Under federal law, "[accrual occurs] when the plaintiff has 'a complete and present cause of action'" . . . "'that is, when plaintiff can file suit and obtain relief.'"  *Id.*  (quotations omitted).

    2.  <u>Claims from August 2, 2002</u>.

Plaintiff alleges that on August 2, 2002, he was arrested by Defendant Barnett who ordered Nick Reed to take Plaintiff to the scene.  At the scene were Rev. Miller and Defendant Patrick Thomas.  Rev. Miller did not pursue charges and told Defendant Thomas to leave Plaintiff alone and Nick Reed to release Plaintiff.  When Reed informed Defendant Barnett of this information, Defendant Barnett ordered Plaintiff released.

The claims related to this incident are barred by the two-year statute of limitations.  That is, Plaintiff was aware of any claims related to this incident at their occurrence and they were complete at that time.  However, he did not file this action until July 12, 2006, which is beyond two years from when his claims accrued.  Therefore, these claims are due to be

dismissed for failure to state a claim upon which relief can be granted.

      3.  <u>False Imprisonment Claim Commencing October 17, 2002</u>.

Next, Plaintiff complains that he was picked up by Defendant Barnett on October 17, 2002, and held until March, 2003, on the same August 2, 2002, warrant that Rev. Miller did not want to pursue.  The claims connected to this incident are also barred by the two-year statute of limitations for the reason stated above.  Accordingly, Plaintiff's claims are due to be dismissed for failure to state a claim upon which relief can be granted.

      4.  <u>False Imprisonment Claim Commencing July 15, 2003, and Excessive Force Claim</u>.

Then, Plaintiff was picked up on July 15, 2003, on the same warrant, by Defendant Barnett who told Plaintiff that he would make sure that Plaintiff was convicted even if it was false because his friends in Chatom are the district attorney, Defendant Ben Kelly, Defendant Judge Baxter, and Judge Crow. Officer House took Plaintiff to the Chatom Jail where Plaintiff was allegedly beaten by Defendant William Wheat and Defendants Priston, Mike Reed, and Mosley, in an attempt to coerce a confession from Plaintiff.  On October 17, 2003, a preliminary hearing was held.

Plaintiff's false imprisonment claim connected to

Plaintiff's third incarceration on the August 2, 2002, warrant accrued by the preliminary hearing on October 17, 2003.  And Plaintiff's excessive force claim accrued at the very latest by October 17, 2003.  However, Plaintiff did not file this action until July 12, 2006, which exceeds two years after October 17, 2003, when his claims accrued.  Therefore, these claims are barred by the two-year statute of limitations and are due to be dismissed for failure to state a claim upon which relief can be granted.

  C.   <u>Plaintiff's Criminal Defense Counsel</u>.

  Defendant Ben Kelly represented Plaintiff in his state court criminal case.  Plaintiff contends that Defendant Kelly was ineffective because he said that he would not represent Plaintiff to the best of his ability and that this was Defendant Kelly's role in the conspiracy with Defendants Barnett and Keahey.  Defendant Glen Davidson purportedly failed to raise amended claims on direct appeal and grounds in the Rule 32 proceeding, which were "his actions to help justify his conspired (sic) and agreed upon action requested by Crow and Baxter and their Chief Mike Barnett in the illegal malicious conviction aginst (sic)[Plaintiff]."  (Doc. 8 at 14)  Then Defendant J. Perry Newton allegedly denied "effective assistance of counsel" to Plaintiff in Rule 32 proceedings on August 4, 2006, as a favor to his best friend Defendant Barnett.  In the

federal proceedings against Plaintiff, Defendant Carlos Williams
of the Federal Defender Organization represented Plaintiff at
trial and is alleged to have committed malpractice and to have
engaged in a conspiracy and in the malicious prosecution of
Plaintiff.

A necessary element in a § 1983 action is that the
defendant have acted under color of state law when the alleged
constitutional deprivation was committed. *Parratt v. Taylor*,
451 U.S. 527, 535, 101 S.Ct. 1908, 1913 (1981), *overruled on
other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).
However, in a § 1983 action, court-appointed, criminal defense
counsel does not act under color of state law in the absence of
a conspiracy. *Polk County v. Dobson*, 454 U.S. 312, 325, 102
S.Ct. 445, 453 (1981).  Only when a conspiracy exists between
criminal defense counsel and a state actor may criminal defense
counsel be found to be acting under color of state law. *Tower
v. Glover*, 467 U.S. 914, 920, 104 S.Ct. 2820, 2824 (1984).

In *Polk County*, the Supreme Court reasoned that "[except
for the source of payment, [the] relationship [between criminal
defendant and defense counsel is] identical to that existing
between any other lawyer and client." *Id.* at 318, 102 S.Ct. at
449.  The *Polk County* Court concluded that "[this [relationship]
is essentially a private function, traditionally filled by
retained counsel, for which state office and authority are not

16

needed." *Id.* at 319, 102 S.Ct. at 450 (footnote omitted).  The
Court determined that court-appointed, criminal defense counsel
carried out the traditional functions of a lawyer representing a
criminal defendant and therefore did not act under color of
state law. *Id.* at 325, 102 S.Ct. at 453.  Thus, the Court ruled
that the § 1983 complaint must be dismissed against criminal
defense counsel for lack of state action. *Id.*

   This law is also applied in *Bivens* actions[6] brought against
criminal defense counsel who are paid by the federal government.
*Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir. 1990) ("An
action under *Bivens* is almost identical to an action under
section 1983, except that the former is maintained against
federal officials while the latter is against state officials.")
(citing *Carlson v. Green*, 446 U.S. 14, 24-25, 100 S.Ct. 1468,
1474-75 (1980); *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct.
2894, 2909-10 (1978)).

   In *Bivens* actions, the decision in *Polk County* has been
employed to dismiss claims against a federal defender, *Cox v.
Hellerstein*, 685 F.2d 1098, 1099 (9th Cir. 1982), and an
attorney appointed pursuant the Criminal Justice Act, 18 U.S.C.
§ 3006A, *Christian*, 907 F.2d at 810.  In applying the *Polk*

---

   [6] In *Bivens v. Six Unknown Named Agents of Fed. Bureau of
Narcotics*, 403 U.S. 388, 389, 91 S.Ct. 1999 (1971), the Supreme
Court found a cause of action for damages against federal
officials who inflict unconstitutional harm while acting under
color of federal law.

*County* decision to *Bivens* actions, it was determined that "[if a public defender does not act under color of state law in representing an indigent defendant in a state criminal proceeding, it follows that a public defender does not act under color of federal law in performing the identical functions as a lawyer to an indigent defendant in a federal criminal proceeding." *Cox*, 658 F.2d at 1099; *accord Christian*, 907 F.2d at 810.

The Court has previously found that a conspiracy claim was not stated by Plaintiff.  Furthermore, these particular allegations do not demonstrate contacts that an understanding was reached and therefore are not sufficient to establish a conspiracy.  *Harvey v. Harvey,* 949 F.2d 1127, 1133 (11th Cir. 1992) (ruling that merely stringing together the discreet steps in the commitment process without alleging contacts that would prove an understanding was reached did not state a conspiracy claim).  As previously stated, Plaintiff's allegations are vague and conclusory and are therefore subject to dismissal.  *Fullman,* 739 F.2d at 556-557.  Accordingly Defendants Kelly, Davidson, and Newton did not act under color of state law, and Defendant Williams did not act under color of law.  Thus, Plaintiff has failed to state a claim against these Defendants upon which relief can be granted in this action.  Morever, in the context of this action because invalidation of Plaintiff's convictions

has not been shown, the claims against Plaintiff's criminal defense counsel are frivolous as well.  *See, infra.*

D. <u>Claims Against Defendant Judges</u>.

After gathering the allegations made against Defendants who are judges, the Court finds the allegations and their information to be meager.  Plaintiff complains that Defendant Judge Baxter would not tell Defendant Kelly to properly represent Plaintiff at trial.  In Plaintiff's Rule 32 proceeding, Defendant Judge Baxter denied appointment of new counsel for Plaintiff and Plaintiff's request to represent himself.  And Defendant Judge Steele denied Plaintiff effective assistance of counsel, the motion of acquittal, and a mistrial when he gave the jury an *Allen* charge.

In a § 1983 action, a judge is entitled to absolute judicial immunity from damages for those acts taken while he was acting in his judicial capacity unless he acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 1105 (1978)(quotation omitted); *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996); *Scott v. Hayes*, 719 F.2d 1562, 1563 (11th Cir. 1983).  A judge is entitled to this immunity even though his action "was in error, was done maliciously, or was in excess of [his] authority." *Stump*, 435 U.S. at 356, 98 S.Ct. at 1105.  Absolute judicial immunity ensures "that a judicial officer, in exercising that authority

vested in him, [is] free to act upon his own convictions, without apprehension of personal consequences to himself," *id.* at 355, 98 S.Ct. at 1104 (quotation omitted), which is a "principle of the highest importance to the proper administration of justice[.]"  *Id.*

Absolute immunity is also accorded to federal district and circuit judges to claims for damages and injunctive relief. *Bolin v. Story,* 225 F.3d 1234, 1239-42 (11th Cir. 2000); *cf. Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (observing that pursuant to *Butz v. Economou*, 438 U.S. 478, 500 (1978), a federal official enjoys the same immunity in a *Bivens* action that a state official has for an identical violation under § 1983).

Based on the allegations, it appears that Plaintiff dealt with Judge Baxter in his judicial capacity because the complained of acts arose from Plaintiff's contact with him in judicial proceedings when he was performing typical judicial acts involving Plaintiff's criminal case.  That is, Plaintiff is complaining about a lack of a favorable ruling by a judge. Judge Baxter was the Circuit Court Judge of Washington County, Alabama.  *Bell v. Culliver,* CA No. 07-0605-WS-C, Doc. 8, Ex. A, at 1 & 38 (Plaintiff's habeas action).  As an Alabama circuit court judge, Judge Baxter had jurisdiction over all felony prosecutions.  ALA. CODE § 12-11-30(2)(1975).  And Plaintiff was

20

convicted of receiving stolen property, second degree, a felony. ALA. CODE § 13A-8-18(b).

Thus, it is clear that Judge Baxter was acting in his judicial capacity in his dealings with Plaintiff and within his jurisdiction.  Therefore, Judge Baxter is entitled to absolute judicial immunity from any damages claims and to have the damages claims dismissed as frivolous.  *Simmons*, 86 F.3d at 1084-85.

It is readily apparent that Plaintiff's contact with Judge Steele was in his judicial capacity.  Plaintiff's criminal case was before Judge Steele when Judge Steele gave the *Allen* charge to the jury and made the other complained of rulings.  And Judge Steele was acting within his jurisdiction as a federal district court judge.  "The judicial power [of the United States] shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States and treaties. . . ." U.S. CONST. art. III, § 2.  That is, Plaintiff was being prosecuted for violations of federal law, which resulted in Plaintiff's outstanding conviction for a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm).[7]

Even though Plaintiff contends that an error was committed, an error in a ruling does not deprive a judge of absolute

---

[7]Plaintiff was found not guilty of Count 2, a violation of 18 U.S.C. § 922(j), possession of a stolen firearm (Doc. 30).

judicial immunity.  *See Stump*, 435 U.S. at 363-64, 98 S.Ct. at
1108-09 (holding that judicial immunity extends to judicial acts
that may contain error).  Clearly, Judge Steele was acting in
his judicial capacity and within his jurisdiction as a federal
district court judge.  Because both prongs of the *Stump* test are
met, Judge Steele is entitled to absolute judicial immunity from
Plaintiff's claims.  Accordingly, the claims against Judge
Steele are due to be dismissed as frivolous as a matter of law.
*Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1833.

    E.  <u>Claims Against Prosecutors</u>.

    Plaintiff alleges that Defendant Bobby Keahey knew through
Defendant Barnett that Plaintiff was actually guilty of stealing
the property and that Plaintiff tried to return the property,
but Defendant Keahey prosecuted Plaintiff knowing that Plaintiff
was given permission to have the property and that his
prosecution was not sought by the owners.  Then, in regard to
Defendant York, the allegations reflect that Defendant Barnett
told Plaintiff that in the event Plaintiff's state conviction
was overturned on appeal, he would make sure that "something
would stand" so he planned to contact his friend Defendant York
and have Defendant York prosecute Plaintiff with false
statements.  This allegedly resulted in Plaintiff being falsely
arrested, convicted, and sentenced.  Plaintiff asserts that
Defendant York denied him effective assistance of counsel, his

motion of acquittal, and a mistrial because he did not want the case dismissed.

A prosecutor is entitled to absolute prosecutorial immunity from damages in a § 1983 action for acts or omissions associated with the judicial process, in particular, those taken in initiating a prosecution and in presenting the government's case. *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S.Ct. 984 (1976); *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985); *Fullman*, 739 F.2d at 558-59. This immunity is also available to a federal prosecutor in a *Bivens* action. *Bolin*, 225 F.3d at 1242; *Allen v. Thompson*, 815 F.2d 1433, 1434 (11th Cir. 1987).

In recognizing that the § 1983 statute provides no immunities, the Supreme Court looks to common law and the functions being performed to determine if the prosecutor is to be accorded absolute immunity for his actions. *Malley v. Briggs*, 475 U.S. 335, 342, 106 S.Ct. 1092, 1096-97 (1986). Plaintiff's allegations, however, are not clear as to when Defendant Keahey made the decision to prosecute him and to prosecute him allegedly on the wrong charge. Notwithstanding this lack of information concerning Defendant Keahey's function, it appears that his acts were closely associated with the judicial process. And an examination of Plaintiff's habeas action indicates that Defendant Keahey was involved in obtaining Plaintiff's indictment. *Bell v. Culliver*, CA No. 07-0605-WS-C,

Doc. 8, Att. 1 at 6.

"[A] prosecutor is entitled to absolute immunity for 'acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State.'" *Mastroianni v. Bowers*, 173 F.3d 1363, 1366 (11th Cir. 1999) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 2615 (1993)). The act of seeking an indictment is the first step in the process of seeking a conviction. *Id.* at 343, 106 S.Ct. at 1097. A prosecutor seeking an indictment is therefore protected with absolute immunity in order not to "impair the performance of a central actor in the judicial process." *Id.; accord Mastroianni*, 173 F.3d at 1366 (holding that the prosecutor's potential for liability occurs before the commencement of the grand jury proceedings). To expose a prosecutor to liability at this initial phase could hinder his exercise of independent judgment at subsequent phases of the prosecution because this potential for liability would affect the later decisions he makes in the prosecution. *Id.; cf. Burns v. Reed*, 500 U.S. 478, 490 n.6, 111 S.Ct. 1934, 1941 n.6 (1991) ("There is widespread agreement among the Court of Appeals that prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries."). Thus, Defendant Keahey's decision to initiate prosecution and to present the State's case entitles

24

him to absolute prosecutorial immunity.  *Imbler,* 424 U.S. at 430-31, 96 S.Ct. at 995.

Turning to Defendant York, Plaintiff does not direct a specific allegation to him.  The allegations that are directed to him involve other Defendants, such as Judge Steele, Defendant Barnett, and Defendant Williams, and would more appropriately be directed to someone in another role in a prosecution.  Even though these allegations appear to be connected to the prosecution of Plaintiff, they are not based on acts typically taken by a prosecutor, such as denying the motion of acquittal, a mistrial, and effective assistance of counsel, and giving the jury the *Allen* charge.  Thus, it appears that Plaintiff has failed to state a claim against Defendant York upon which relief can be granted.

F.  Claims Against Defendant Patrick Thomas.

Plaintiff alleges that Defendant Thomas gave false statements to Defendant Barnett on August 2, 2002, which were used to arrest Plaintiff, and gave false testimony at Plaintiff's trial on November 4, 2003.  Plaintiff's claim against Defendant Thomas for giving false statements on August 2, 2002, accrued at that time.  *Wallace*, 127 S.Ct. at 1100.  The statute of limitations on this claim is two years.  *Lufkin,* 956 F.2d at 1106, 1108.  However, Plaintiff filed this action on July 12, 2006, which exceeds two years after his claim accrued

25

against Defendant Thomas.[8]

The other aspect of Plaintiff's claim against Defendant Thomas is for his testimony at Plaintiff's trial on November 4, 2003. A witness during a trial is entitled to absolute witness immunity for his testimony. *Briscoe v. LaHue,* 460 U.S. 325, 326, 340, 103 S.Ct. 1108, 1111, 1121 (1983). This is particularly true of a private witness who is not a state official. *Id.* at 335, 103 S.Ct. at 1116. However, the overriding reason for granting immunity to all witnesses for their testimony at trial is to protect the judicial process from disruption and to allow participants, i.e., judges, prosecutors, to perform without fear of intimidation or harassment. *Id.* at 335, 103 S.Ct. at 1115.

Based on these reasons, the claims against Defendant Thomas are due to be dismissed as frivolous.

G.   <u>Application of Heck v. Humphrey as an Alternate Basis</u>.

In the Court's handling of Plaintiff's claims, the Court discussed first all of the claims individually and found that

---

[8]The Court previously discussed a more general claim based on this incident, which included this specific claim, when it initially discussed the statute of limitations. Nonetheless, there exists an alternate basis for dismissing Defendant Thomas – lack of state action. Defendant Thomas has not been shown to be a person who acts under color of state law. Thus, Plaintiff has failed to state a claim against him for this reason as well. *Parratt*, 451 U.S. at 535, 101 S.Ct. at 1913 (in order to state a claim under § 1983, the violation of federal law must be committed by a person acting under color of state law).

they are subject to being dismissed for reasons other than
ripeness.  The Eleventh Circuit Court of Appeals in *Abella v.
Rubino*, 63 F.3d 1063 (11th Cir. 1995), directed that district
courts to do this before the ripeness holding of *Heck v.
Humphrey,* 512 U.S. 477, 114 S.Ct. 2364 (1994)*,* is applied.  *Id.*
at 1065 n.3.  The Eleventh Circuit reasoned that a defendant
should have an immunity issue addressed first rather than have
the dismissal occur under *Heck v. Humphrey* on ripeness grounds
in order to avoid a future suit.   *Id.*

However, the holding from *Heck v. Humphrey*, is an alternate
basis for the dismissal of many of Plaintiff's claims.   The *Heck*
Court reasoned:

> We hold that, in order to recover damages
> for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by
> actions whose unlawfulness would render a
> conviction or sentence invalid, (footnote
> omitted), a § 1983 plaintiff must prove that
> the conviction or sentence has been reversed
> on direct appeal, expunged by executive
> order, declared invalid by a state tribunal
> authorized to make such determination, or
> called into question by a federal court's
> issuance of a writ of habeas corpus, 28
> U.S.C. § 2254.  A claim for damages bearing
> that relationship to a conviction or
> sentence that has *not* been so invalidated is
> not cognizable under § 1983.  Thus, when a
> state prisoner seeks damages in a § 1983
> suit, the district court must consider
> whether a judgment in favor of the plaintiff
> would necessarily imply the invalidity of
> his conviction or sentence; if it would, the
> complaint must be dismissed unless the
> plaintiff can demonstrate that the
> conviction or sentence has already been

27

> invalidated.  But if the district court
> determines that the  plaintiff's action,
> even if successful, will *not* demonstrate the
> invalidity of any outstanding criminal
> judgment against the plaintiff, the action
> should be allowed to proceed (footnote
> omitted), in the absence of some other bar
> to the suit (footnote omitted).

*Id.* at 486-87, 117 S.Ct. at 2372-73.

Plaintiff's damages claims that would undermine his convictions if the Court were to rule favorably on them are not recognizable in this action if they have not "been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."  *Id.* at 487, 114 S.Ct. at 2372.  Until the prescribed invalidation of a conviction has occurred, the *Heck* Court "den[ies] the existence of a cause of action."  *Id.* at 489-90, 114 S.Ct. at 2373-74.  Plaintiff nonetheless has not shown that his convictions have been invalidated.  As a consequence, those claims that would invalidate his convictions if the Court were to rule favorably on them are due to be dismissed.[9]

---

[9]Plaintiff's criminal action in this Court reflects that an appeal was taken and that the Eleventh Circuit affirmed Plaintiff's conviction and sentence (Doc. 76).  Plaintiff's subsequent Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 81) was denied (Docs. 90 & 91).  Plaintiff's appeal of the decision was dismissed on November 21, 2007, for failure to pay the filing fee (Doc. 97).
And Plaintiff's state court conviction for receiving stolen

IV.   Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Plaintiff's claims are either frivolous or fail to state a claim upon which relief may be granted.


MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection**.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de*

property, second degree, is being reviewed in a habeas action in this Court, *Bell v. Culliver,* CA No. 07-0605-WS-C.

*novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 17th day of December, 2007.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE